LEON GREENBERG, ESQ., SBN 8094
DANA SNIEGOCKI, ESQ., SBN 11715
Leon Greenberg Professional Corporation
2965 South Jones Blvd- Suite E3
Las Vegas, Nevada 89146
Tel (702) 383-6085
Fax (702) 385-1827
leongreenberg@overtimelaw.com
dana@overtimelaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| CAMERON E. OLIVER, Individually and on behalf of others similarly situated, | CASE NO.: 2:16-cv-00305-JAD-PAL |
| Plaintiff, | **JOINT MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVING REQUEST FOR SETTLEMENT ADMINSTRATION FEES; AND ENTERING FINAL JUDGMENT** |
| vs. | |
| BELL TRANS, a Nevada Corporation, and BRENT J. BELL, | |
| Defendants. | |

Plaintiff Cameron E. Oliver ("Plaintiff") and Defendants Bell Trans, a Nevada Corporation, and Brent J. Bell ("Defendants") (collectively, "the Parties") jointly, through their counsel of record, hereby move the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. Sec. 216(b) for an order granting final approval of the proposed class action and collective action settlement reached by the Parties. This motion seeks final approval and final certification of the proposed class and collective action settlement, approval of the Settlement

Administrator's fees, and the entry of a final judgment in this action.  Plaintiffs will also concurrently be filing a separate unopposed motion for an order approving a request for their attorneys' fees and costs and approving a Service Award to the named plaintiff.

## MEMORANDUM OF POINTS AND AUTHORITIES

### OVERVIEW OF THE CASE, ITS STATUS, AND THE REASONS FOR THE SUBMISSION OF THIS AMENDED MOTION

This Action was originally filed on January 20, 2016, in the Eighth Judicial District, Clark County, Nevada and was subsequently removed to the United States District Court, District of Nevada.  Defendants operate a limousine business in Clark County, Nevada.   The Plaintiff worked as a limousine driver for Defendants. Plaintiff claims he, and numerous other limousine drivers, worked over 40 hours a week, and were not paid overtime wages (time and one-half pay) in accordance with federal law.   Plaintiff further claims he and other drivers were not paid the required minimum wage, either pursuant to the Fair Labor Standards Act (the "FLSA), 29 U.S.C. Sec. 207, or Nevada law.  Accordingly, he filed this case as a Rule 23 class action for his state law claims and as an "opt in" collective action as to his FLSA claims.  Defendants deny all the Plaintiff's allegations and maintain that the Plaintiff was properly compensated under federal and state law.

After exchanging relevant information and discovery and good-faith, arms-length negotiation, including two mediation sessions, the parties reached an

agreement to resolve the putative class and FLSA collective action claims.    That agreement was preliminarily approved by this Court on November 8, 2018.  ECF No. 88.  In compliance with that Preliminary Approval Order, notice of the proposed class action settlement was dispatched to the members of the certified settlement class, and the period provided by the Court for claims and objections from class members, and for the class members to exclude themselves from the settlement, has now closed.  The parties now jointly move the Court for an order granting final approval to the class action settlement, approving the payment of fees to the settlement administrator, and entering final judgment.

## **ARGUMENT**

## I.    IN APPROVING THE SETTLEMENT, THE COURT MUST FIND THE SETTLEMENT IS "FAIR, REASONABLE AND ADEQUATE"

Final approval of a class action settlement requires a determination that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e); *see also Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 112-13 (S.D.N.Y. 1999).  This Court must evaluate the proposed settlement and reach an "informed, just and reasoned decision" in respect to whether such settlement merits approval.  *United States v. Oregon*, 913 F.2d 576, 582 (9th Cir. 1990), citing and quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).  That evaluation, although necessary, "'"must stop short of the detailed and thorough' investigation of a trial."  *Id.*, quoting and citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir.

1974).   "The reviewing court should not determine contested issues of fact that underlie the dispute." *Id.*, citing *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

With respect to the fairness and reasonableness of the settlement, the settlement makes available a total of $150,000 to settle and resolve the class claims, including reasonable attorneys' fees and costs, the payment of the settlement administrator's fees, and a class representative service award payment to the individual named plaintiff,[1] and, as set forth fully below, is a reasonable compromise well within the range of fairness, reasonableness, and adequacy in all respects.

## II.   THE SETTLEMENT IS SUBSTANTIVELY AND PROCEDURALLY FAIR, ADEQUATE, AND REASONABLE AND SHOULD BE GRANTED FINAL APPROVAL

### A.   Scope and Background of Settlement

The settlement provides for the resolution of all claims involving any alleged failure to pay proper minimum and overtime wages by the named defendants and any past, present, or future parent, divisions, subsidiaries, affiliates, shareholders, directors, officers, agents, employees, attorneys, insurers, predecessors, successors, and assigns ("Released Parties") or other persons who may be potentially liable for

---

[1] Approval for attorneys' fees, costs, and service award payments to the named plaintiff are made by a separate unopposed motion.

such claims.  The claims covered are those resulting from work performed by the class members during the period of January 20, 2013 through the date of dispatch of Notice to the settlement class members.  The class consists of 645 identified employees of defendant who are the class members, such persons were identified by an examination of 1,142 separate sets of limousine employee records.  Notice of this settlement was sent to all such class members, as provided for by the Stipulation of Settlement.  *See*, Ex "A," Declaration of Christina Francisco, an employee of Simpluris.

It is submitted that the settlement satisfies the requirements for fairness, reasonableness, and adequacy.  First, the relief provided to the class members under the settlement is substantial, and it does not grant inappropriate advantageous treatment to the class representative or any class members.  Second, the settlement eliminates the burdens and risks associated with continued litigation of this complicated lawsuit.  Absent settlement, the parties face the burden, expense, and delay of additional and uncertain litigation.  Third, this case has proceeded sufficiently, and enough information has been gathered, to allow the Court to make an informed judgment as to the propriety of the proposed settlement.  The experienced attorneys for the parties are aware of the strengths and weaknesses of their respective cases and have assessed the reasonableness of the proposed settlement's terms.

As documented to the Court in the declaration of Simpluris, a Notice in the form approved by the Court was sent to the 645 potential settlement class members.  Ex.  "A."   That Notice included a description of the settlement terms and the minimum amount proposed to be paid to the class member if the proposed settlement terms were approved; how the class members could completely exclude themselves from the settlement; and how the class members could object to the settlement and any of its terms.  All such information was included in the Notice form previously approved by the Court in its Order granting preliminary approval of the settlement.  No objections have been made to the proposed settlement and the time for making such objections has expired.   As provided for in the Notice and this Court's Order Granting Preliminary Approval, the last day for serving and filing such objections was February 5, 2019.   No objections have been served or filed.

**B.**    **Summary of Settlement Terms**

The Settlement requires the defendants to make available a total of $150,000.00 to satisfy all claims – including attorneys' fees and costs, a representative service award to the named plaintiff, and the costs of the administration of the settlement.   After all such proposed deductions, there will be $83,372 available for payment of the claims of individual claiming settlement class members.

The settlement releases defendants and any past, present, or future parent, divisions, subsidiaries, affiliates, shareholders, directors, officers, agents, employees, attorneys, insurers, predecessors, successors, and assigns, or other persons who may be potentially liable for the released claims.  That release is for all class members under Nevada state law and federal law unless such class members choose to exclude themselves from the class and the settlement.  A total of seven (7) class members have elected to be excluded.  Ex. "A" at ¶ 14.

The settlement further provides that defendants make no admission as to the merits of the allegations made against it in the litigation.  Notwithstanding the settlement, defendants contend that they fully complied at all times with the state and federal wage and hour laws.

Under the terms of the settlement, and as provided for in the Court's order granting preliminary approval, Simpluris has been serving as the claims and settlement administrator.  The work undertaken by them, and their request for compensation for their services, is set forth in their Ex. "A" declaration.

## C.   The Relevant Rule 23 Class Action
## Settlement Approval Standard

When determining whether to grant final approval to a class action settlement, courts review such settlements in light of strong judicial and public policies favoring compromise.  *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999).  A class action suit, with the accompanying litigation time, cost,

and uncertainty, particularly lends itself to settlement.  *See Air Line Stewards &*
*Stewardesses Ass'n v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166-67 (7th Cir.
1980) ("Federal courts look with great favor upon the voluntary resolution of
litigation through settlement. . .this rule has particular force regarding class action
lawsuits."); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116
(2d Cir. 2005) (noting the "strong judicial policy in favor of settlements,
particularly in the class action context.") (citation omitted).  Although class
settlement requires the Court to exercise independent scrutiny of the settlement in
connection with granting settlement approval, the Court, must also give "proper
deference to the private consensual decision of the parties."  *Hanlon v. Chrysler*
*Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Under that "proper deference standard" the Court's examination of the terms
of a class settlement "...must be limited to the extent necessary to reach a reasoned
judgment that the agreement is not the product of fraud or overreaching by, or
collusion between, the negotiating parties, and that the settlement, taken as a
whole, is fair, reasonable and adequate to all concerned."  *Id.*, citing *Officers for*
*Justice*, 688 F.2d at 625.

**D.    The Proposed Class Action**
       **Settlement Merits Final Approval**

The proposed settlement, taken as a whole, is fair, reasonable and adequate
to all concerned.  There has been no collusion, fraud, or other improper dealings

8

between counsel and the parties.   This case has been vigorously litigated.  The settlement amount is substantial.  The parties have engaged in an exchange of relevant information, proof of liability and damages is uncertain, and the settlement grants a substantive monetary benefit to all participating class members.  In addition to its substantive terms, the overall structure of the settlement, the relevant facts, and the relationship of the vast majority of the class members with the defendants, as discussed, *supra*, also supports a finding of fairness.[2]

The proposed settlement fund is fair and appropriate.  It provides for a total class settlement fund of $150,000.00, an amount that is estimated to be equal to a substantial, and clearly not nominal, amount of the damages allegedly owed to the class members.  The facts supporting the adequacy and appropriateness of the settlement are discussed at length in Ex. "B," Declaration of Class Counsel, such information also having, in large part, been previously communicated to the Court in connection with the motion for preliminary approval (Ex. "B" to ECF No. 85).  Class members who believe the settlement provides inadequate compensation for

---

[2]     The Court's Order granting preliminary approval of the settlement (ECF No. 88), found, for settlement purposes, that the various typicality, commonality, superiority, etc., requirements of Rule 23(a) and (b) were satisfied in this case so that class certification was appropriate.  No circumstances have since come to pass to challenge those claims and findings and no objections to the same have been raised.  Accordingly, such issues are not discussed further in this motion and are understood as having been appropriately briefed to the Court and resolved to the Court's satisfaction.

their individual claims were free to exclude themselves from the settlement and proceed with individual litigation.  This settlement, both in terms of structure and relief granted to the class, is eminently fair and quite favorable to the class.

In the absence of any settlement, defendants will vigorously oppose the class certification of this action if this litigation proceeds.  If that opposition were successful, the many class members with small claims might find themselves unable to secure any remedy whatsoever.

This Court, in finding that the settlement is fair, reasonable, and adequate, is not charged with determining whether the settlement could have been better or provided greater relief to the class:

> Of course it is possible, as many of the objectors' affidavits imply, that the settlement could have been better. But this possibility does not mean the settlement presented was not fair, reasonable or adequate. Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion. In this regard, the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness. *Hanlon,* 150 F.3d at 2017.

Seven (7) of the 645 class members have chosen to exercise their opt-out rights, or 1.09% of the overall class, a fact which strongly supports a finding that the settlement is fair, reasonable and adequate.  Also, as in *Hanlon*, there is no evidence of collusion.  The record amply demonstrates that the settlement should be approved as fair, reasonable and adequate.

Class counsel, who has substantial experience in class actions and wage and hour litigation, has concluded that this settlement, reached after hard-fought arms-length negotiations, is fair, reasonable and adequate.  Ex. "B."   Although class counsel believes the class claims are meritorious, they are experienced and realistic, and understand that the litigation process is inherently uncertain.  The settlement alleviates this uncertainty.  This factor weighs heavily in favor of final approval.  Even if liability could be established, significant uncertainties exist as to both the fact, and the quantum, of alleged damages.  Damages are likely to be disputed and be the subject of a "dispute between experts [retained by the parties], a dispute whose outcome is impossible for [the Court] to predict."  *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 CI 7905 (MBM), 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992); *see also In re Warner Commc'ns. Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Undoubtedly, expert testimony would be needed to fix not only the amount, but the existence, of actual damages.  In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited...").

Uncertainty concerning liability and damages might result in little or no recovery for members of the class after trial.  But even the possibility that the class "might have received more if the case had been fully litigated is no reason not to approve the settlement."  *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citation omitted).  The settlement "provides for relief now,

not some wholly speculative payment of a hypothetically larger amount years down the road." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003). Under these circumstances, it is proper for the parties "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citation omitted).

The risk of establishing and maintaining class certification status through trial is also present. Defendant has not consented, except for settlement purposes, to the class treatment of the plaintiffs' claims and would vigorously oppose class certification. While plaintiffs' counsel believes class certification of all the claims in this case is appropriate, they also recognize that defendant may be able to raise legitimate objections to such a class certification. In addition, defendant's business is not an exceptionally large operation. As such, it is also possible that defendant would not be able to pay an adverse verdict and continuing with this litigation, and securing after trial a judgment larger than the proposed settlement, might result in no recovery whatsoever for the class. Accordingly, these factors also favor settlement.

Class Counsel has determined that this case presents significant risks that militate toward substantial compromise. Defendant has agreed to settle this case for a substantial amount, $150,000 with the structure of the settlement providing $83,372 of that amount will be available to be paid to the individual class members who chose to make claims. The class members have vigorously and

enthusiastically come forward and presented claims for 44.94% of that amount meaning that $37,465.47 will be paid to the claiming class members.  Ex. "A" at ¶ 13.  In light of all of the relevant circumstances, class counsel believes defendants have and are making a fair and equitable settlement payment for the release of the claims of the class members.  Ex. "B."

### E.      The Proposed Administration Expenses Should Be Approved

The claims and settlement administrator, Simpluris, will be requesting approval of a payment of $10,528 for its services in administering the settlement.  Ex. "A ."  The details of Simpluris's work in such capacity are set forth in the Ex. "A" declaration.   Such payment is reasonable for the services provided to the class and should be approved as requested.  Such payment is also within the range of payments approved for such services in similar cases.  *See*, *Bond v. Ferguson Enterprises Inc*., 2011 U.S. Dist. LEXIS 70390 ($18,000 administration fee awarded in a wage and hour action involving approximately 550 class members); *Vasquez v. Coast Valley Roofing,* 266 F.R.D. 482, 483-84 (E.D. Cal. 2010) ($25,000 settlement administration fee in a wage and hour case involving 170 potential class members).

### CONCLUSION

For the foregoing reasons, the Court should grant final approval to the proposed class action settlement, enter the proposed Order for such final approval,

and approve the payment of the settlement and claims administrator's expenses as requested.

Dated:    March 22, 219                    Dated:    March 22, 2019

Respectfully submitted,                    Respectfully submitted,

/s/ *Leon Greenberg*                       /s/ *Ricardo Cordova, Esq.*
LEON GREENBERG, ESQ.                       ANTHONY L. HALL, ESQ.
DANA SNIEGOCKI, ESQ.                       RICARDO CORDOVA, ESQ.
LEON GREENBERG                             HOLLAND & HART LLP
PROFESSIONAL                              9555 Hillwood Drive
CORPORATION                               Las Vegas, NV  89134
2965 South Jones Blvd., #E3               Tel: (702) 669-4600
Las Vegas, NV  89146                      Fax: (702) 669-4650
Tel (702) 383-6085                        Attorneys for Defendants
Fax (702) 385-1827
Attorneys for Plaintiffs

PROOF OF SERVICE

I hereby certify that the above and foregoing was electronically filed using the Court's CM/ECF system on this 22nd day of March, 2019, which will send electronic notification of this filing to all counsel of record.

    /s/ *Dana Sniegocki*
Dana Sniegocki

# EXHIBIT "A"

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CAMERON E. OLIVER, individually and on behalf of others similarly situated,<br><br>                                   Plaintiff,<br><br>vs.<br><br>BELL TRANS, a Nevada Corporation, and BRENT J. BELL,<br><br>                                   Defendants. | CASE NO.:  2:16-cv-0305-JAD-PAL<br><br>**DECLARATION OF CHRISTINA FRANCISCO REGARDING NOTICE AND SETTLEMENT ADMINISTRATION** |

<u>**DECLARATION OF CHRISTINA FRANCISCO**</u>

I, CHRISTINA FRANCISCO, declare the following facts to be true and correct and if called as a witness would testify competently to the same:

1.      I am employed as a Case Manager by Simpluris, Inc. ("Simpluris"), the Claims Administrator in the above-entitled action.  Our Corporate Address is 3194-C Airport Loop Drive, Costa Mesa, CA 92626.  My telephone number is (714) 640-5644.  I am over 21 years of age and authorized to make this declaration on behalf of Simpluris and myself.

2.      Simpluris is a class action settlement administration company headquartered in Costa Mesa, California.  It was founded by individuals who have each managed hundreds of settlements along with professionals in the areas of software development, third-party claims administration, mail-house operations and call center support management.

3.      Simpluris was appointed by the Court as Settlement Administrator to administer the settlement in accordance with the terms of the Class Action Settlement Agreement entered into by

the parties on or about August 31, 2018 (the "Settlement Agreement").  Simpluris has been, and if the Court grants final approval of the Settlement, will be responsible for, among other things: (a) printing and mailing the Notice of Proposed Settlement of Class Action Lawsuit and Collective Acton Lawsuit ("Class Notice"), Claim and Consent Form and Request for Exclusion Form (collectively, the "Notice Packet"); (b) receiving undeliverable Notice Packets; (c) receiving and validating Claim and Consent Forms and requests for exclusion; (d) mailing reminder post-cards to those members of the Class who did not return a Claim and Consent Form or a request for exclusion; (e) calculating individual settlement payments, distributing funds, and tax-reporting following final approval; (f)  mailing settlement checks; (g) answering questions from Class Members; and (h) performing such other tasks necessary to effectuate the terms of the Settlement or as the Parties mutually agree or the Court orders Simpluris to perform.

4.     A toll-free telephone number was included in the Class Notice for the purpose of allowing the Class Members to call Simpluris and to make inquiries regarding the Settlement.  The system is accessible 24 hours a day, 7 days a week, and will remain in operation throughout the settlement process.  Callers have the option to speak with a live call center representative during normal business hours or to leave a message and receive a return call during non-business hours. The toll-free telephone number included in the Class Notice was 1-888-226-8857.

5.     On November 19, 2018, Simpluris received the Court-approved Notice, Claim and Consent Form and Request for Exclusion Form ("Notice Packet") from Counsel.  The Notice Packet advised Class Members of their right to submit a claim, opt out from the Settlement, object to the Settlement, or do nothing, and the implications of each such action.  The Notice Packet advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information. The Claim and Consent Form was pre-

**DECLARATION OF CHRISTINA FRANCISCO REGARDING NOTICE SETTLEMENT ADMINISTRATION**

printed with the name and address of the Class Member and their estimated payment.  A sample Notice Packet is attached hereto as **Exhibit A**.

6.      On November 20, 2018 Counsel for Defendant provided Simpluris with a mailing list ("Class List") containing the name, last known address, Social Security number, and pertinent employment information during the Class Period for the Class Members.   The Class List contained data for 645 Class Members.

7.      The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service.  The NCOA contains changes of address filed with the U.S. Postal Service.  In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice Packets.

8.      On December 7, 2018 after updating the mailing addresses through the NCOA, Notice Packets were mailed via First Class Mail to 645 Class Members contained in the Class List.

9.      After the initial notice mailing, 9 individuals contacted Simpluris to request inclusion in the Settlement Class.  Information regarding the self-identifying Class Members was forwarded to Defense Counsel for research to determine if they should be included in the Settlement Class. It was determined that after a review of each of the individuals' specific compensation during the class period as a result of self-identification, they did not qualify to be included in the class and should not be added.

10.     As of this date, 106 Class Notices were returned by the post office.  For those without forwarding addresses, Simpluris attempted to find a forwarding address using Accurint, a reputable research tool owned by Lexis-Nexis.  Simpluris used the Class Member's name and previous address to locate a current address.  Altogether, Simpluris re-mailed 128 Class Notices to either; a new

forwarding address provided by the Post Office, a newfound address using Accurint, or a forwarding address provided by the Class.  Ultimately, 14 Class Notices remain undeliverable because Simpluris was unable to find a deliverable address.

11.     On January 16, 2019, Simpluris mailed a reminder postcard to 505 Class Members who had not responded to the initial mailing with the return of a Claim and Consent Form or a Request for Exclusion Form.  A copy of the postcard is attached hereto as **Exhibit B**.

12.     Simpluris was responsible for receipt of all Claim and Consent Forms.  As of this date, Simpluris has received claims from 233 Class Members. The 233 valid claims represent 36.12% of the entire Settlement Class.

13.     As of today, there are 234 Participating Class Members who will be paid their portion of the Net Settlement Amount.  The valid claims account for approximately 44.94% of the Net Settlement Amount or $37,465.47. The Net Settlement Amount available to pay Participating Class Members was determined as follows:

| | | |
|---|---|---|
| **Gross Settlement Fund:** | **$** | **150,000.00** |
| Less Attorneys' Fees (Requested) | -$ | 46,500.00 |
| Less Litigation Costs (Requested) | -$ | 4,600.00 |
| Less Settlement Administration: | -$ | 10,528.00 |
| Less Plaintiff Service Awards (Requested) | -$ | 5,000.00 |
| **NET SETTLEMENT FUND** | **$** | **83,372.00** |

The total *average* recovery under the settlement is approximately $164.50 and the total *highest* recovery is approximately $533.56.

14.     As of this date, Simpluris has received 7 requests for exclusion from the Settlement. The 7 valid requests for exclusion represent 1.09% of the Settlement Class and were made by

Suzanne Mendoza, John D. Torres, Jon Lochridge, Dale Rosenberg, Juan Hernandez-Munoz, Glenn Denbraber and Takuya Kosaka.

15.     Class Members who wished to object were directed to file their objection with the Court and serve a copy of the objection on the attorneys for the parties.  As of this date, Simpluris has not received any objections.

16.     The most current weekly report is attached hereto as **Exhibit C**.

17.     Simpluris' total costs for services in connection with the administration of this Settlement, including fees incurred and anticipated future costs for completion of the administration, are $10,528. Simpluris' work in connection with this matter will continue with the calculation of the settlement checks, issuance and mailing of those settlement checks, etc., and to do the necessary tax reporting on such payments.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.  Executed this 22th day of March, 2019, in Winter Park, Florida.


Christina Francisco

**DECLARATION OF CHRISTINA FRANCISCO REGARDING NOTICE SETTLEMENT ADMINISTRATION**

# EXHIBIT A

Oliver v. Bell Trans et. al.
Case No. 2:16-cv-0305-JAD-PAD
UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

## CLAIM AND CONSENT FORM FOR BELL TRANS CLASS SETTLEMENT

**To participate in this Settlement, this form must be completed and postmarked no later than February 5, 2019 and actually received by the Claims Administrator by <u>February 8, 2019</u>.**

«Barcode»    «BarcodeString»
　　　　SIMID «SIMID»
　　　　«FirstName» «LastName»
　　　　«Address1» «Address2»
　　　　«City» «State» «Zip»

Name/Address Changes (please enter if applicable):

_____

_____

_____

### GENERAL INFORMATION

You have been provided with this Claim and Consent Form because you are a Class Member in this case, as more fully described in the Notice provided to you with this form. That Notice also describes the proposed Settlement of this case and your entitlement to a Settlement Award under that proposed Settlement.

**In order to receive money (meaning a Settlement Award) from the Settlement, you must sign this Claim and Consent Form and return it by first-class mail, postmarked no later than February 5, 2019 to the following address:**

**Oliver v. Bell Trans et. al.**
P.O. Box 26170
Santa Ana, CA 92799
Telephone: (888) 226-8857

A return envelope is provided. **The Claim and Consent Form must also be <u>received</u> at the above address by February 8, 2019.** If you fail to submit your Claim and Consent Form by that date, with such a postmark, your claim will be rejected and you will not receive any money in connection with the Settlement (although you will be bound by the other provisions of the Settlement approved by the Court).

### CLAIM INFORMATION

Your proposed Settlement Award is a minimum of $«MERGED_EstSettAmnt_CALC». Your actual Settlement Award may be larger.

### DECLARATION OF CLASS MEMBER AND RELEASE

In exchange for the Settlement Award I will receive, on behalf of myself and on behalf of all who claim by or through me or in my stead, I hereby release Defendants, meaning Bell Trans, a Nevada Corporation, Bell Trans Limousine Concierge Service, Inc.., and Brent J. Bell and all of their past or present or future parent, divisions, subsidiaries, affiliates, shareholders, directors, officers, agents, employees, attorneys, insurers, predecessors, successors, and assigns (the "Released Parties") from all claims, demands, rights, liabilities, and causes of action that were or might have been asserted (whether in tort, contract, or otherwise) for violation of any state or federal law, whether for economic damages, noneconomic damages, restitution, penalties, liquidated damages, punitive damages, interest or other monies arising out of, relating to, or in connection with any facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act, which are or could be the basis of claims that the Released Parties failed to pay or recouped wages to which I was entitled, improperly classified me as exempt from overtime pay, failed to provide me all overtime wages due, failed to pay me minimum wage, failed to provide to me timely or accurate paychecks, failed to provide me with meal or rest periods, failed to keep records properly concerning time Class Members' worked, and/or failed to timely or properly pay Class Members any wages to which I was entitled, from anytime between January 20, 2013 and the date this notice is mailed, in connection with my work as an employee of defendants (the "Released Claims").

I have received the Notice of Proposed Class Action Settlement. I submit this Claim Form under the terms of the proposed settlement described in the Notice. I also submit to the jurisdiction of the United States District Court of Nevada with respect to my claim as a Class Member and for purposes of enforcing the release of claims stated in the Settlement Agreement on file with the Court and the Notice. The full and precise terms of the proposed settlement are contained in the Settlement Agreement filed with the Court. I further acknowledge that I am bound by the terms of any Judgment that may be entered in this class action.

If I am the executor and/or heir of a Class Member or a representative of a Class Member, I have provided appropriate documentation about the capacity in which I am submitting this Claim Form on separate sheets attached.

I declare under penalty of perjury that the foregoing information is true and accurate, that I have read and understand the Notice that was mailed with this Claim Form, and agree to abide by the terms of the Notice and this Claim Form.

THIS FORM IS TO BE POSTMARKED BY FEBURARY 5, 2019 AND RECEIVED BY FEBURARY 8, 2019 AT:

**Oliver v. Bell Trans et. al.**
P.O. Box 26170
Santa Ana, CA 92799
Telephone: (888) 226-8857

A RETURN ENVELOPE IS PROVIDED - **YOU MUST SIGN AND RETURN THE SECTION BELOW!**

## CONSENT FORM UNDER 29 USC 216(b)

By signing below the above named person hereby agrees to be joined as a plaintiff in this case pursuant to 29 U.S.C. Sec. 216(b) and be bound by all determinations and the final judgment made in this case.


Signature: _____
«FirstName» «LastName»

«Barcode»
«BarcodeString»

SIMID «SIMID»

Oliver v. Bell Trans et. al.
Case No. 2:16-cv-0305-JAD-PAD
UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

## REQUEST FOR EXCLUSION FORM

To exclude yourself from the Settlement and NOT receive your share of the Settlement, you must sign and return this Exclusion Form **postmarked** no later than February 5, 2019.  This form must be mailed or faxed to the Claims Administrator at the below address:

**Oliver v. Bell Trans et. al.**
P.O. Box 26170
Santa Ana, CA 92799
Telephone: (888) 226-8857
Fax: (714) 824-8591

**BY SUBMITTING THIS FORM, I AM CONFIRMING THAT IT IS MY DECISION <u>NOT</u> TO PARTICIPATE IN THIS CLASS ACTION AND <u>NOT</u> TO BE INCLUDED AS A CLASS MEMBER IN THIS CLASS ACTION.  I UNDERSTAND THAT I WILL RECEIVE NO MONEY FROM THIS SETTLEMENT.**

By signing and returning this Exclusion Form, I certify that I have carefully read the Notice of Class Action Settlement ("Class Notice") that I was sent and that I wish to be excluded from the Settlement described therein. <u>I understand this means that I will not receive any money or other benefits under the Settlement, and I will not be subject to the terms of the Settlement</u>.


_____     (_____) \_\_\_\_-_____
Print Name                                                               Phone Number

_____
Mailing Address                     City                       State                    ZIP

_____
Signature                                                     Date

«Barcode»
«BarcodeString»                                                                        SIMID   «SIMID»

Oliver v. Bell Trans et. al.
Case No. 2:16-cv-0305-JAD-PAD
UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACITON LAWSUIT AND COLLECTIVE ACTION LAWSUIT**

TO:    «FirstName» «LastName»

**THIS NOTICE AFFECTS YOUR RIGHTS.**
**PLEASE READ IT CAREFULLY.**
_____

1.    YOU ARE HEREBY NOTIFIED that a proposed settlement ("Settlement") of the above-captioned class and collective action ("Action") pending in the United States District Court for the District of Nevada has been reached by Defendants Bell Trans, a Nevada Corporation, Bell Trans Limousine Concierge Service, Inc., and Brent J. Bell (collectively "Defendants") and Cameron Oliver individually and on behalf of other persons (collectively "Plaintiffs" or "Class Members") (Plaintiffs and Defendants are jointly referred to as the "Parties") and has been granted preliminary approval by the Court supervising the Action. The purpose of this Notice is to describe the Action, to inform you of the terms of the proposed Settlement, and to inform you of your rights and options in connection with the proposed Settlement. **The proposed Settlement will resolve all of your Nevada State Law claims in this Action unless as discussed below you exclude yourself from the Settlement.** The proposed Settlement will **NOT resolve your Federal Law (Fair Labor Standards Act) claims that could be made in this case unless you file a claim in this case ("opt in" to the case) and elect to receive a settlement payment.** A Final Approval Hearing will be held on April 12, 2019, to determine whether that Settlement should be granted final approval. Because your rights may be affected, it is extremely important that you read this Notice carefully. **IF YOU WANT TO RECEIVE A SETTLEMENT PAYMENT FROM THE SETTLEMENT YOU MUST FILE A CLAIM WHICH IS POSTMARKED BY THE U.S. POSTAL SERVICE BY <u>FEBURARY 5, 2019.</u>** Unless you file such a claim you will NOT receive any payment from the Settlement. Your Nevada State Law rights will also be limited as a result of the Settlement even if you do not file such a claim, unless you elect to exclude yourself from the Settlement.

**SUMMARY OF THE ACTION**

2.    This Action was filed on January 20, 2016 alleging the Defendants owed the Plaintiff and other of its limousine driver employees unpaid minimum wages and/or overtime wages under Nevada State Law and the Federal Fair Labor Standards Act ("the FLSA"). After litigating and exchanging relevant information, and more than two years of hard fought litigation, the Parties agreed to try and resolve Plaintiffs' claims. Counsel for the Parties, with the assistance of a skilled mediator, have formulated a proposed Settlement the terms of which are incorporated in the Stipulation of Settlement that is on file with the Court and the terms of which are generally summarized below.

3.    You have received this Notice because, based upon Defendants' records, you are a Class Member and your Nevada State Law rights will be affected by this Settlement unless you exclude yourself from the Settlement. You are also receiving this Notice because you are eligible to participate in this FLSA Collective Action and you have a right to "opt in" to this case under the FLSA by completing and returning the enclosed Consent Form under 29 U.S.C. 216(b).

**POSITIONS OF THE PARTIES**

4.    Defendants have denied and continue to deny each of the claims in the Action. Defendants contend that all of their employees who worked as limousine drivers have been compensated in compliance with the law, and that their conduct was not willful with respect to any alleged failure to pay any wages (including but not limited to overtime, minimum wage, piece rate wages, or otherwise), and/or with respect to any of their compensation practices. Defendants have repeatedly asserted and continue to assert defenses to the claims in the Action, and have expressly denied and continue to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Action. Neither the proposed Settlement nor any action taken to carry out the proposed Settlement is, may be construed as, or may be used as an admission, concession or indication by or against Defendants of any fault, wrongdoing or liability whatsoever.

5.    Counsel for the Plaintiffs ("Plaintiffs' Counsel") has extensively investigated and researched the facts and circumstances underlying the issues raised in the Action, and the law applicable thereto. Plaintiffs' Counsel recognizes the expense and length of continued proceedings necessary to continue the Action against Defendants through trial and through any possible appeals. Plaintiffs' Counsel has also taken into account the uncertainty and the risk of the outcome of further litigation, including the risk that the class might not be certified in light of Defendants' opposition to class and collective action certification as well as the difficulties and delays generally inherent in such litigation.

6.    Plaintiffs' Counsel is also aware of the burdens of proof necessary to establish liability for the claims, of Defendants' defenses thereto, and of the difficulties in establishing damages for the Class Members. Plaintiffs' Counsel has also taken into account the extensive settlement negotiations conducted by the Parties. Based on the foregoing, Plaintiffs' Counsel believes the proposed Settlement is fair, adequate and reasonable and in the best interests of the Class Members.

7.    Defendants have also extensively investigated and researched the facts and circumstances underlying the issues raised in the Action, and the law applicable thereto. Although Defendants believe they have meritorious defenses to the Action, Defendants have concluded that the further defense of this Action would be lengthy and expensive for all Parties. Defendants have, therefore, agreed to settle this Action in the manner and upon the terms set forth in the proposed Settlement to put to rest all Nevada State Law claims that are or could have been asserted against it in the Action and, for those Class Members who elect to "opt in" to join the FLSA Collective Action by settling the Class Members' FLSA claims as well.

8.    The Court has made no ruling on the merits of the Class Members' claims and has determined only that class and collective action certification of the Class Members' claims, for settlement purposes, is appropriate.  In doing so it is authorizing, subject to the Court's final consideration of the merits of the proposed Settlement, the complete resolution of the Class Members' Nevada State Law claims.  It is also authorizing, subject to the Court's final consideration of the merits of the proposed Settlement, the resolution of the FLSA claims of only the Class Members that consent to such resolution of their FLSA claims ("opt in" under the FLSA) by making a claim to receive a portion of the Settlement.

## PRELIMINARY APPROVAL OF THE SETTLEMENT

9.    On November 8, 2018, the Court appointed the following attorneys as Plaintiffs' Counsel to represent the Class in this Action:

Leon Greenberg and Dana Sniegocki
Leon Greenberg Professional Corporation
2965 South Jones Boulevard, Suite E3
Las Vegas, NV 89146

10.    On November 8, 2018, for purposes of the Settlement, United States District Judge Jennifer Dorsey of the United States District Court for Nevada, conditionally certified a Class and Collective Action for settlement purposes consisting of certain of Defendants' limousine drivers.

11.    You are receiving this Notice because you are a Class Member and certain Nevada State Law claims you possess may be released as part of the proposed Settlement described below if it is approved by the Court, unless you make a written request for exclusion in the manner described below.  In no event will any claim you possess for unpaid minimum wages or unpaid overtime wages under the federal Fair Labor Standards Act be released based upon your failure to take any action in this case.

## SUMMARY OF SETTLEMENT TERMS

12.    The following is a summary of the provisions of the proposed Settlement.  The specific and complete terms of the proposed Settlement are described in the Stipulation of Settlement ("Settlement Agreement"), a copy of which is available for your review as set forth at the end of this Notice.

13.    The Court will hold a Final Approval Hearing on the Settlement Agreement in Courtroom 6-D of the United States District Court for Nevada located at 333 S. Las Vegas Boulevard, Las Vegas, Nevada, 89101 at 3:30 p.m. on April 12, 2019, at which time the Court will determine whether to grant final approval to the Settlement.  You do not need to attend that hearing to participate in the proposed Settlement.

14.    Settlement Amount.  The Settlement Agreement provides that Defendants will pay up to $150,000 (the "Settlement Fund") to fully resolve the issues in the Action.  After the following proposed deductions, which must be approved by the Court, the remaining amount is proposed to be available for distribution to Class Members who file a Claim and Consent Form with certain unclaimed amounts, if any, to be retained by Defendants.

(a)    Deductions. The parties propose to make these deductions from the Settlement Fund:

(1)    Attorneys' Fees and Expense Award.  The Court has appointed Leon Greenberg and Dana Sniegocki of Leon Greenberg Professional Corporation as Plaintiffs' counsel.  As part of the Settlement approval process, Plaintiffs' Counsel will seek approval of an award of attorneys' fees of no more than $46,500 and actual costs of up to $4,600 (the "Fees and Expense Award").  Plaintiffs' Counsel shall not be permitted to petition the Court for any additional payments for fees, costs or interest and the Fees and Expense Award shall be utilized for all claims for attorneys' fees and costs, past, present and future incurred in the Action.  As part of the Settlement, you will not be required to pay Plaintiffs' Counsel for their representation of you in the Action.

(2)    Named Plaintiff Award.  Plaintiffs' Counsel will also seek a Named Plaintiff Award of $5,000 to be paid to Cameron Oliver, in recognition of his efforts in obtaining the benefits of the Settlement for the Class and in exchange for a full release of their claims against Defendants.

(3)    Settlement Administration Expenses. The Court has tentatively approved payment to the Claims Administrator to notify the class and process claims.  That payment is currently estimated not to exceed $12,500.

(b)    Payments to Class Members: Plan of Allocation.  The approximate expected $81,400 remaining (the Net Settlement Fund or "Settlement Fund for Distribution") after these deductions will be available to pay Settlement Awards to all Class Members who become eligible to receive a Settlement Award by timely and properly returning the Claim and Consent Form provided with this Notice to the Settlement Administrator and who do not exclude him/herself from the Class ("Eligible Class Members").  Settlement Awards will be calculated as follows:

Each Eligible Class Member shall be entitled to a portion of the Settlement Fund for Distribution which is based upon their calculated share of the allegedly unpaid monies estimated to be owed to all Class Members.  The share of each Eligible Class Member has, in turn, been arrived at through an examination, conducted by a Certified Public Accountant retained by the plaintiffs' counsel, of the records maintained by Defendants that record the amounts each Eligible Class Member was paid and that provide an indication of the hours that they have worked.  Various estimates and approximations were also used by that Certified Public Accountant in arriving at that share for all Eligible Class Members.

NOTICE OF PROPOSED SETTLEMENT OF CLASS ACITON LAWSUIT AND COLLECTIVE ACTION LAWSUIT

In the event Eligible Class Members holding less than 40% of the value of the Settlement Fund for Distribution submit valid Claim and Consent Forms the amount of each Eligible Class Member's Settlement Award shall be increased proportionately so that the total value of all Eligible Class Member Settlement Awards equals 40% of the Settlement Fund for Distribution.

(c)  Tax Matters.  All Settlement Awards are subject to taxation.  One-half of each Settlement Award is considered wages and will be issued in the form of a payroll check from which tax deductions will be taken and for which a W-2 form will be provided.  One-half of each Settlement Award will be treated as a payment of interest and/or statutory penalties from which no tax deductions will be taken and for which a 1099 form will be provided.

(d)  Conditions of the Settlement.  This Settlement is conditioned upon the Court entering an order at or following the Final Approval Hearing approving the Settlement as fair, reasonable, adequate and in the best interests of the Settlement Class, and entering Judgment in accordance with the Settlement Agreement.

## RELEASE OF CLAIMS

15.  All Class Members who have not validly requested exclusion from the Settlement will, in respect to their claims arising under Nevada State Law, be bound by the terms of the proposed Settlement if it is approved and if the Order of Final Approval dismissing the Action is entered and Judgment becomes final.  If the proposed Settlement is approved, all Class Members will have released Defendants, meaning Bell Trans, a Nevada Corporation, Bell Trans Limousine Concierge Service, Inc., and Brent J. Bell and all of their past or present or future parent, divisions, subsidiaries, affiliates, shareholders, directors, officers, agents, employees, attorneys, insurers, predecessors, successors, and assigns (the "Released Parties") from all claims, demands, rights, liabilities, and causes of action that were or might have been asserted (whether in tort, contract, or otherwise) for violation of any state law, whether for economic damages, noneconomic damages, restitution, penalties, liquidated damages, punitive damages, interest or other monies arising out of, relating to, or in connection with any facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act, which are or could be the basis of claims that the Released Parties failed to pay or recouped wages to which Class Members were entitled, improperly classified Class Members as exempt from overtime pay, failed to provide Class Members all overtime wages due, failed to pay Class Members minimum wage, failed to provide Class Members timely or accurate paychecks, failed to provide Class Members with meal or rest periods, failed to keep records properly concerning time Class Members' worked, and/or failed to timely or properly pay Class Members any wages to which they were entitled, from anytime between January 20, 2013 and the date this notice is mailed, in connection with the Class Members' work as employees of defendants (the "Released Claims").  The foregoing release shall **NOT** release any claim possessed by any Class Member under the Fair Labor Standards Act who does not submit a valid Claim and Consent form.

16.  All Class Members who have not excluded themselves from the Class claims made under Nevada State Law by filing a timely request for exclusion will be permanently barred from suing or otherwise making a claim against any of the Released Parties that is in any way related to the Released Nevada State Law Claims.

17.  Plaintiffs and all Class Members stipulate and agree that, upon the Effective Date of this Settlement they shall be deemed to have, and by operation of the Final Settlement Order and Judgment entered by the Court shall have, expressly waived and relinquished the Released Nevada State Law Claims and any and all state law actions, suits, claims, demands, rights, liabilities or causes of action that the Class Members do not know of or suspect to exist in their favor, which, if known by them, might have affected their agreement to the Settlement.  Even if the Plaintiffs and/or the Class Members may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Nevada State Law Claims, each Plaintiff and Class Member, upon the Effective Date of this Settlement, shall be deemed to have and by operation of the Settlement Order and Judgment shall have, fully, finally, and forever settled and released any and all of the Released Nevada State Law Claims.

18.  The Class Members agree not to sue or otherwise make a claim against any of the Released Parties that is in any way related to, arises out of, or is connected with the Released Nevada State Law Claims.  The Settlement Awards and the Named Plaintiff Award shall be paid to Eligible Class Members specifically in exchange for the release of the Released Parties from the Released Nevada State Law Claims and, in respect to the Eligible Class Members only the release of those Class Members' FLSA claims as well, and for the covenant not to sue concerning the Released Nevada State Law Claims.

## PROCEDURE FOR RECOVERY UNDER THE SETTLEMENT

19.  If you want to participate in the Settlement and receive money, meaning a Settlement Award, under the Settlement, you must complete, sign, and date the enclosed Claim and Consent Form under 29 U.S.C. 216(b) and mail it with your original signature by postage pre-paid U.S. first class mail postmarked by the U.S. Postal Service by no later than February 5, 2019 and the forms must be actually received no later than February 8, 2019 by the Claims Administrator at the following address:

Oliver v. Bell Trans et. al.
P.O. Box 26170
Santa Ana, CA 92799

A copy of your Claim and Consent Form is attached.  If you need an extra copy, contact the Claims Administrator at telephone (888) 226-8857.  If any information provided on the Claim and Consent Form is incorrect, please make corrections if you wish to have confirmation that the Claims Administrator has received your Claim and Consent Form, you may do so by sending it by certified U.S. Mail with a return-receipt request.

20.     If you do not choose to exclude yourself from the Settlement, you will be bound by all of the provisions of the Settlement Agreement between the Parties in respect to the Release of the Released Nevada State Law Claim that will prevent you from separately suing the Released Parties for the Released Nevada State Law Claims settled in this case (see paragraphs 15-17 above). Your failure to exclude yourself from the Settlement will NOT limit your right to sue the Released Parties under the FLSA for any FLSA claims you may have.

21.     If you do not submit a timely Claim and Consent Form you will not receive a Settlement Award. If you do nothing – that is, if you do not mail and deliver a timely and properly signed Claim and Consent Form to the Claims Administrator you will not be entitled to a Settlement Award. However, you will be bound by the terms of the Settlement even though you did not receive any money and will have also given up your legal right to prosecute any of the released Nevada State Law claims unless you also preserve that legal right by excluding yourself in writing from the Settlement as provided in paragraph 22**.**

### PROCEDURE FOR EXCLUSION

22.     Class Members may exclude themselves from (or "opt-out" of) the Nevada State Law portion of the Settlement by mailing an Exclusion Form to the Claims Administrator at the address listed in paragraph 19, on or before February 5, 2019. The Exclusion Form is attached. It must be postmarked by the U.S. Postal Service on or before February 5, 2019, and actually received by the Claims Administrator no later than February 8, 2019. Class Members who submit valid and timely requests to opt-out of the Settlement will not participate in the Settlement, nor will they be bound by the terms of the proposed Settlement, if it is approved, or the Final Approval Order and Judgment in this action.

### OBJECTIONS TO THE PROPOSED SETTLEMENT/FINAL SETTLEMENT HEARING

23.     A Final Approval Hearing will be held before United States District Judge Jennifer Dorsey of the United States District Court for Nevada in Courtroom 6D of the United States District Court, located at 333 S. Las Vegas Boulevard, Las Vegas, Nevada 89101 at 3:30 p.m. on April 12, 2019, to determine whether the proposed Settlement is fair, adequate and reasonable and whether it should be approved by the Court and whether the Action should be dismissed on the merits with prejudice. The hearing may be adjourned, continued and/or rescheduled by the Court from time to time as the Court may direct without further notice.

24.     Only Class Members may object to the Settlement. Any Class Member who wishes to object to the Settlement must timely complete a Claim and Consent Form, file with the Court a written statement objecting to the Settlement and provide copies to counsel for the Parties. Such written statement must be filed with the Court and served on counsel for the Parties no later than February 5, 2019. No Class Members shall be entitled to be heard at the Final Approval Hearing (whether individually or through separate counsel) or to object to the Settlement, and no written objections or briefs submitted by any Class Members shall be received or considered by the Court at the Final Approval Hearing, unless written notice of the Class Member's intention to appear at the Final Approval Hearing, and copies of any written objections or briefs, shall have been timely filed with the Court and served on counsel for the Parties. Any written objections and briefs must be served on counsel for the Parties at the following addresses:

| Plaintiffs' Counsel: | Defendant's Counsel: |
|---|---|
| Leon Greenberg | Anthony Hall |
| Leon Greenberg Professional Corporation | Holland & Hart LLP |
| 2965 South Jones, Suite E3 | 5441 Kietzke Lane, Second Floor |
| Las Vegas, NV 89146 | Reno, NV 89511 |

25.     Any Class Member who does not file with the Court and serve on counsel for the Parties his or her written objections in the manner provided above shall be deemed to have waived such objections and shall be foreclosed from making any objections (by appeal or otherwise) to the proposed Settlement.

26.     Any Class Member who is satisfied with the proposed Settlement need not appear at the Final Approval Hearing.

### CHANGE OF ADDRESS

27.     If you move after receiving this Notice, if it was misaddressed, or if for any reason you want your payment or future correspondence concerning this Action and the Settlement to be sent to a different address, you should supply your current preferred address to the Claims Administrator and to Plaintiffs' Counsel at the contact information listed in paragraphs 19 or 24.

### EXAMINATION OF THE PAPERS AND ADDITIONAL INQUIRIES

28.     The foregoing is only a summary of the matters involved in the Action and the proposed Settlement and does not purport to be comprehensive. For a more detailed statement of the matters involved in the Action and the proposed Settlement, you may refer to the pleadings, the Settlement Agreement, and other papers filed in the Action, which may be inspected at the Office of the Clerk of the United States District Court, located in Las Vegas, Nevada, during regular business hours of each Court day.

29.     Inquiries involving legal questions about this Notice and/or legal questions about the Settlement or your legal rights should be directed to Plaintiffs' Counsel, Leon Greenberg, Leon Greenberg Professional Corporation, 2965 South Jones Boulevard, Suite E3, Las Vegas, Nevada 89146, telephone: (702) 383-6085, email: leongreenberg@overtimelaw.com (email communications are preferred).

30.     You may also retain your own attorney at your own expense.

**PLEASE DO NOT CONTACT THE CLERK OF THE COURT, THE JUDGE, OR DEFENDANTS' COUNSEL WITH INQUIRIES.**



No. 9 Envelope Front



**BUSINESS REPLY MAIL**
FIRST-CLASS MAIL    PERMIT NO 47    COSTA MESA  CA

POSTAGE WILL BE PAID BY ADDRESSEE

**Oliver v. Bell Trans et. al.**
**C/O  SIMPLURIS**
**PO BOX 26170**
**SANTA ANA CA 92799-9834**

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

No. 9 Envelope Back



# EXHIBIT B

Oliver v. Bell Trans et. al.
P.O. Box 26170
Santa Ana, CA 92799-9834

PRESORTED
FIRST-CLASS MAIL
US POSTAGE
PAID
SIMPLURIS INC

«BarcodeString»

«BarcodeString»
SIMID «SIMID»
«FirstName» «LastName»
«Address1» «Address2»
«City», «State» «Zip»

Oliver v. Bell Trans et al.
Case No. 2:16-cv-0305-JAD-PAL
UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

On **December 7, 2018**, a Notice of Class Action Settlement, Claim and Consent Form and Request for Exclusion Form ("Notice Packet") were mailed to you describing the settlement of the above-referenced case and your right to submit a claim or a request to be excluded from the settlement.

Response Deadline: To submit a timely claim or a request to be excluded from the settlement it **must be** post-marked on or before **February 5, 2019 and actually received by the Claims Administrator by February 8, 2019.**

If you lost or misplaced the Notice of Class Action Settlement, Claim and Consent Form or Request for Exclusion Form, you should contact the Claims Administrator immediately at (888) 226-8857 to request another Notice Packet to be mailed to you. Again, your Claim and Consent Form or Request for Exclusion Form must be post-marked on or before **February 5, 2019 and actually received by the Claims Administrator by February 8, 2019,** and mailed to the address indicated below:

**Oliver v. Bell Trans et. al.**
P.O. Box 26170
Santa Ana, CA 92799

For further questions you can also contact:
Claims Administrator — (888) 226-8857

# EXHIBIT C



3/22/2019
Case Manager Name: Christina Francisco
Case Manager Email: cfrancisco@simpluris.com
Case Manager Direct Line: (714) 640-5644

**Oliver v Bell Trans et al**
*United States District Court District of Nevada*
**Case No. 2:16-cv-0305-JAD-PAL**

**Plaintiff Counsel**                              **Defense Counsel**

*Leon Greenberg / Leon Greenberg Professional Corporation*       *Anthony L Hall / Holland & Hart LLC*
*Dana Sniegocki / Leon Greenberg Professional Corporation*        *Rico Cordova / Holland & Hart LLC-Reno*
                                                                  *Jennifer L Smith / Holland & Hart LLC- Reno*

**Case Milestones**

| | |
|---|---|
| Preliminary Approval Hearing | November 08, 2018 |
| Notification Mailing | December 07, 2018 |
| Reminder Mailing - Response Deadline | January 16, 2019 |
| Claim Deadline | February 05, 2019 |
| Opt Out Deadline | February 05, 2019 |
| Objection Deadline | February 05, 2019 |
| Final Approval Hearing | April 12, 2019 |

**Response Summary**                                              **Total Class Members:    645**

*"Total Responses Submitted" is based on responses processed as of date reflected on the report.*

| | Total | Rate |
|---|---|---|
| **Claim Form - Claim and Consent Form** | **233** | **36.12%** |
| Valid | 233 | 36.12% |
| Pending | 0 | 0.00% |
| **Opt Out Form** | **7** | **1.09%** |
| Valid | 7 | 1.09% |
| Pending | 0 | 0.00% |

**Mailing Details**

| MailingTitle | Mailed | Returned | Remailed | Undeliverable |
|---|---|---|---|---|
| Notice Packet | 645 | 106 | 128 | 14 |

800-779-2104 / Fax - 714-824-8591
www.simpluris.com

Orange County
3176 Pullman Street, Suite 123, Costa Mesa, CA 92626

Orlando
1155 S. Semoran Blvd., Suite 3 - 1120, Winter Park, FL 32792

EXHIBIT "B"

LEON GREENBERG, ESQ., SBN 8094
DANA SNIEGOCKI, ESQ., SBN 11715
Leon Greenberg Professional Corporation
2965 South Jones Blvd- Suite E3
Las Vegas, Nevada 89146
Tel (702) 383-6085
Fax (702) 385-1827
leongreenberg@overtimelaw.com
dana@overtimelaw.com

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

CAMERON E. OLIVER,
Individually and on behalf of others
similarly situated,

          Plaintiff,

vs.

BELL TRANS, a Nevada
Corporation, and BRENT J. BELL,

          Defendants.

CASE NO.: 2:16-cv-00305-JAD-PAL

**DECLARATION OF PLAINTIFFS'
COUNSEL, LEON GREENBERG,
IN SUPPORT OF THE PARTIES'
JOINT MOTION FOR ORDER
GRANTING FINAL APPROVAL
OF CLASS ACTION
SETTLEMENT; APPROVING
REQUEST FOR SETTLEMENT
ADMINSTRATION FEES; AND
ENTERING FINAL JUDGMENT**

Leon Greenberg, an attorney duly licensed to practice law in the State of

Nevada, and a member of the bar of this Court, hereby affirms, under the penalty

of perjury, that:

1.  My law office represents the Plaintiff CAMERON E. OLIVER ("Plaintiff") in

the above-captioned action.  I am submitting this declaration in support of the

parties' joint request for an order granting final approval of the parties' proposed

class and collective action settlement (the "Settlement"), approving the parties'

request for the payment of the settlement administrator's fees, and the entering of

final judgment.  In light of the relevant factual and legal circumstances, I believe

the Settlement is in the best interests of the proposed class and collective action

members (referred to collectively as "Class Members") and is a sensible alternative

to continued litigation of this case, which may possibly result in a less favorable

recovery, or no recovery whatsoever, for the Class Members.

**WHETHER THE ALLEGED CLASS AND COLLECTIVE ACTION
MEMBERS WILL SECURE ANY
RECOVERY IF THIS CASE IS LITIGATED IS UNCERTAIN
AND UNDER THE RELEVANT CIRCUMSTANCES THE PROPOSED
SETTLEMENT IS HIGHLY FAVORABLE TO THE CLASS**

3.   Plaintiff's Complaint alleges that the defendants' limousine drivers did not

receive minimum wages or proper overtime pay under the FLSA and Nevada law.

Those claims are subject to significant factual and legal disputes and involve

difficult issues of proof, as to both liability and damages.  In light of those

disputes, I believe the proposed Settlement is fair and reasonable and merits the

requested final approval.  The basis for that conclusion is that (a) The proof of the

class claims, and their amount, is subject to significant dispute, based upon the

available information, the defendants' records, that my office has had analyzed; (b)

The ability of the class members to collect unpaid overtime wages under the FLSA

(to the extent class members elect to "opt in" and make FLSA claims in this case, there is no Nevada Rule 23 overtime claim) is subject to a significant overtime exemption claim; (c) Class certification itself is going to be opposed by defendants, and the efficacy of class action certification, or at least a class action resolution of the amount of damages owed to each class member, is open to serious dispute; (d) Based upon the information available to me, and the analysis conducted for my office of the available data by Glenn Pannenborg, CPA, who has previously been certified as an expert witness in wage and hour litigation (*See*, *Gortat v. Capala Bros.*, 795 F.3d 292 (2nd Cir. 2015)); and (e) The response from the class to the settlement, consisting of an election by 36.12% of the class members to make settlement claims such persons holding collectively 44.94% of the total value of the proposed settlement fund and the absence of any objections to the settlement.

    4.   <u>Plaintiff's Overtime Claims are Subject to Significant Defenses and their Prosecution is Not Likely to Benefit Many Class Members</u> - Defendants claim the Plaintiff and their other limousine drivers are exempt from the overtime pay requirements of the FLSA.  There are no potential Rule 23 class overtime claims under Nevada law, as the class members are clearly exempt from Nevada's state law overtime pay requirements. *See,* NRS 608.018(3)(j).  Defendants allege that the Plaintiff and their other limousine drivers are exempt from the FLSA's overtime requirements as well under the Motor Carrier Act (or "MCA") exemption involving interstate transportation.   Although Plaintiff denies that the MCA

exemption applies to his FLSA overtime claim, resolution of this issue may prove quite complex.  As discussed in the declaration previously submitted to the Court by Cameron Oliver at paragraph 6 (Ex. "1" to Ex. "B" of ECF No. 85), defendants did have an express policy of forcing him, and their other limousine drivers, to engage in interstate trips, though at least in his case on a less than monthly, or weekly, basis.  Such circumstances, while not necessarily dispositive of the MCA overtime exemption issue, may help defendants establish that exemption.  This issue may also be found to require a high level of individualized factual determination and not be suitable for collective disposition in an FLSA lawsuit.

5.    For the purpose of a negotiated class settlement of this case, I do not ascribe a great deal of value to the FLSA overtime claims made in this case.  I base that conclusion, in part, on the strength of the possible defense to those claims and the potential inability to prosecute those claims on a collective action basis.  I also base it on the strong probability that in an FLSA "opt in" collective action situation a substantial majority of potential "opt in" plaintiffs will *not* "opt in" to prosecute such claims.  For example, in the related *Thurmond v. Presidential Limousine* case, 2:15-cv-01066-MMD-PAL, an FLSA notice of pendency was circulated to 443 eligible employees advising them of their right to "opt in" and prosecute such claims.  Ultimately 57 persons elected to exercise such "opt in" rights, or less than 13% of the total potential such "opt in" plaintiffs.  In my experience it is also

typical for employees, when presented with a class action claims settlement opportunity, to avail themselves of that opportunity at a much higher rate than they will avail themselves of the right to, potentially, prosecute an FLSA claim collectively.   I have found such class settlement participation rates to be, on average, double or triple or more than the rates of FLSA "opt in" case prosecution participation.   For example, in a prior hybrid FLSA/Nevada State Law class/collective action settlement case involving these same defendants, *Lucas v. Bell Trans*, 08-CV-1792 JAD-NJK, settlement claims were made by 43% of the co-extensive Rule 23 class/FLSA collective action members.   Similarly, when the *Thurmond* litigation was settled, 33.42% of the eligible class members elected to participate in the settlement, a participation rate that was over 255% of the initial "opt in" participation rate.   Based on the foregoing, it is clear to me that most of the potential class/collective action members in this case prefer an opportunity to receive an assured payment from a settlement of their Rule 23 class action minimum wage claim, conditioned upon a resolution of their FLSA overtime claim, rather than an opportunity to prosecute an FLSA overtime claim that they will decline to prosecute.  That circumstance renders the value of those FLSA claims smaller for settlement purpose.

   6.   <u>The Available Records Make Proof of the Class Claims Difficult, Whether on an Individual or Class Basis</u> - Plaintiff and the defendants' other limousine drivers were not, during the time period at issue, participating in any

computerized system that linked their accurately recorded working hours (such as from a time clock) with their weekly pay.  As confirmed at paragraph 4 and 5 of plaintiff Oliver's declaration (Ex. "1" to Ex. "B" of ECF No. 85) the defendants' limousine drivers were never provided with any wage statements containing their hours of work information. Nor were fully accurate manual records kept of the limousine drivers' hours of work. The hours worked per week, and wages paid per week, must be established to prove the amount of any unpaid minimum wages, or overtime wages, owed to the class members.  Defendants have produced computerized activity logs or dispatch style records.  Those records indicate when a particular driver was working, on a particular date, with a particular vehicle by reference to when the vehicle was taken, and returned, by the driver.   Those records also on occasion indicate certain periods of break time during a work shift where a driver was recorded as not working.  There is some measure of obviously facial error in those records, such as indications a driver worked in excess of 24 hours (presumably owing to a misplacement of the a.m. and p.m. times in such a record).  While my office has analyzed those records to compile hours worked totals for the class members, the accuracy of those hours of work totals is open to question.

7.    The defendants' limousine drivers were compensated under a commission system.  Those commission earning computer records have also been

produced, and analyzed by my office.  There is no direct consistent linkage in defendants' payroll checks between a particular commission earned during any one-week period and a particular payroll check issued to a driver.  As a result, determining any minimum wage underpayments is not just a question of comparing a single paycheck issued for a pay period of 7 or 14 days and then examining the hours in the activity logs for that same 7 or 14-day period.   This is because a commission earned by a driver during the 1st week of the month might be paid in the next paycheck issued during the 2nd week of the month.  Or it might be paid in a paycheck issued in the 4th week of the month.   As a result, a comparison of hours worked during the 1st week of the month with the wages paid during the 2nd week of the month might lead to an incorrect conclusion that a minimum wage violation occurred.   That is because the wages, for a portion of the work performed by the driver for that 1st week were, in fact, properly paid to him, but in the paycheck issued in the 4th week of the month.   Only through a very careful detailed analysis of the relevant data (examining things such as tip amounts earned by drivers on particular days and paid during particular pay periods) were reasonably accurate conclusions arrived at as to the wages actually paid to each driver for the hours worked during each week.

8.    Glenn Pannenborg CPA, retained by my office for such purpose, has diligently worked to compare the defendants' activity log records and commission

earnings records for the class members to draw reasonable, and accurate, conclusions about the scope of the minimum wage underpayments at issue to the class members.  He was paid over $7,000 to do so (he analyzed the same records in this case and a smaller group of such records for the related case of *Thurmond v. Presidential Limousine* pending before Judge Du).  I believe his conclusions (discussed *infra*) support the adequacy of the proposed settlement amount.   But given the complex nature of the "match up" problem posed by defendants' records of commissions earned, paychecks issued, and hours worked per workweek, proof of the class members' claims, whether individually or on a class basis, is likely to be difficult.

     9.   <u>Certification of the Class and Collective Action Claims will be Opposed and the Claims may not Secure Certification</u>  - Defendants are only consenting to the class certification, and FLSA collective action certification for Rule 23 class members who choose to "opt in" and settle their FLSA claims, for settlement purposes.  They will otherwise vigorously oppose certification arguing that this case is not suitable for Rule 23 class or FLSA collective action certification in any respect.   And as discussed, *supra*, there are significant issues (the FLSA overtime pay exemption, proof of hours worked, wages paid, computation of probable unpaid minimum wages owed) that the Court may well find do not properly allow

for this case to proceed to trial as a class or collective action if the proposed settlement is rejected.

10.     Another difficult issue in this case is the right possessed by some, but not all, class members to the "higher tier" Nevada minimum wage of $8.25 an hour.  That minimum wage is only available to employees to whom an employer fails to make "qualifying" health insurance available.  Determining whether such available insurance was "qualifying" largely revolves around cost of the insurance to the employee and the cost to the employee to include the employee's "dependents" (if they have any) on that insurance.  Since the passage of the ACA, employers who comply with the ACA will, at least in most cases from my observations, offer "qualifying" health insurance to their employees who lack dependents, but not necessarily those who have dependents.   Defendants did offer health insurance to some of the class members and it appears that for some substantial group of the class members, but not all of the class members, such insurance was "qualifying" for Nevada minimum wage purposes.  In opposing class action certification, defendants will argue determining the qualifying/non-qualifying status of that insurance for Nevada minimum wage purposes requires individual determinations for class members rendering this case not suitable for class action treatment under Rule 23.

11.   It is also possible the Court might certify this case for collective action or class action treatment as to certain common liability issues, but otherwise find the calculation of the actual damages owed to any particular individual class member is an individual issue requiring individual proof.   For example, class members may be owed unpaid minimum wages under Nevada Law at the "higher tier" rate, based upon proof of their "dependents" status and the insurance they were offered, or no minimum wages at all under Nevada's "lower tier" minimum wage.   Defendants would argue that issue requires individual determinations and the presentation of proof by each class member.   Granting class certification, and then requiring the presentation of such individual proof of damages, may be of little value to the class members.   Many class members, presumably the overwhelming majority in my opinion, are unlikely to come forward to provide individualized proof of damages to establish their claims.   That is particularly true given the nature of their claims, which are for minimum wages and modest in amount.   I strongly suspect it is quite probable that many, if not most, class members will view the amounts they can recover on those claims as too small to warrant the investment of time needed to come forward and individually substantiate such claims

12.   <u>Based Upon a Reasonable Analysis of the Information Available, the Proposed Settlement is Fair and Adequate</u> -  The proposed settlement makes a total

amount of $150,000 available to settle the class members' claims.   The parties have further agreed to limit class membership to 645 identified persons who were selected from a review of 1,142 separate sets of records of defendants' limousine drivers.  The parties have done so to exclude from the class persons whose claims appear to be *de minimis* in amount using the analysis employed by plaintiffs' expert consultant.  That many of defendants' limousine drivers are *not* being included as class members is, on its face, quite sensible, as many worked extremely brief periods of time and are unlikely to have more than *de minimis* claims (for example, 125 of the studied sets of driver records, or more than 10% of all drivers whose records were examined, worked a total of 7 days or less for the defendants).

13.    A detailed analysis was conducted by plaintiffs' expert consultant of 78 randomly selected limousine drivers of defendants (6.83% of all the drivers for which data was furnished).  That analysis, which attempted to painstakingly "match up" the various data elements discussed, *supra,* (commissions earned each week, timing of the payment of those commissions, and hours worked each week) resulted in a conclusion that such sample was owed, as a group, $16,373 in unpaid minimum wages at $7.25 an hour or $44,699 in unpaid minimum wages at $8.25 an hour (the latter rate being Nevada's higher tier "no medical insurance provided" minimum wage).  That results, on average, in each member of that sample being owed, for each day they were employed by defendants, approximately 46 cents in

unpaid minimum wages at $7.25 an hour, and $1.21 in unpaid minimum wages at $8.25 an hour.  The data produced by defendants indicates that the 645 class members were employed for a total of 259,915 days during the class period. Using the foregoing daily average minimum wages owed analysis, the class damages would be owed $119,561 at a $7.25 an hour rate and $314,497 at an $8.25 an hour rate.[1]   Actual damages would, of course, be different, as this is only a broad average projection and the class members are not all subject to the same $7.25 or $8.25 an hour minimum wage.

14.    In arriving at a distribution system for the settlement amount for each class member, I have employed an analysis that focuses on the probability of unpaid minimum wages being owed to a particular class member and the amount they would be owed.  Each class member is then assigned a percentage interest in the total amount of damages for all class members so calculated and a corresponding *pro rata* percentage of the settlement fund being distributed.  That analysis incorporates the following elements:

(a)    An actual "hourly rate" earned by each of the 645 class

---

[1]   A projection of overtime wages owed was also conducted by plaintiffs' expert consultant.  If it was assumed those overtime wages were actually owed to all of the 78 drivers in the sample studied such amount would be between 52 cents and 74 cents per day of employment.   For the reasons discussed *supra*, I do not believe those amounts warrant significant consideration in estimating an appropriate settlement amount.

members based upon their total earnings and the total hours they are recorded to have worked in defendants' activity logs for the entirety of the class period;

(b)     The number of days each of the 645 class members worked as recorded in defendants' activity logs;

(c)     The assignment of a "tier" to each class member awarding them damages for each of week of employment, calculated from (b), based upon their actual hourly rate (a) for the entirety of their employment.  That "tier" system awards class members with hourly rates below $9.50 an amount of $2.73 per week (for purposes of calculating their interest in total class damages, not as a final settlement payment); those with hourly rates greater than $9.50 but less than $11.75 an hour with $0.67 per week; and those with hourly rates more than $11.75 but less than $13.00 with $0.32 per week.   No class members have an hourly rate (a) that is $13.00 an hour or more.

15.     I believe, pursuant to the foregoing analysis, the proposed settlement amount of $150,000 for the class members is fair and reasonable.  As discussed, *supra*, arriving at precise amounts of minimum wages, if any, owed to each class member is very problematic and difficult.   It is highly unlikely many, if any, of the

class members would be willing to, or have a significant motivation to, corroborate, individually, the amount of minimum wages that they are owed.   Of the 78 persons examined in detail, and for which plaintiffs' counsel expended thousands of dollars in expert costs to arrive at individual damages determinations, only 40 were owed unpaid minimum wages in excess of $25.00 at the $7.25 an hour rate.   The average so owed to each of those 40 persons was $429.21.   If the $8.25 an hour minimum wage rate is used, 60 of those persons were owed unpaid minimum wages in excess of $25.00 and in an average amount of $744.56.

16.    Minimum wages are modest in amount.   As discussed, and not surprisingly, the damages at issue for the class members, based upon unpaid minimum wage claims, are not, in the scheme of litigation, particularly large.   The use of the "daily average" damages analysis I have engaged in, and discussed *supra*, to determine the sufficiency of the proposed class settlement in this case is, in my view, reasonable and appropriate under the circumstances.   I acknowledge that analysis is far from perfect, but given the fundamental dynamics of this case, I cannot formulate, pragmatically, a better basis to evaluate the class claims and the appropriate range for their settlement.   The total pledged settlement consideration, $150,000 is, arguably, less than the full value of the class claims under that analysis (as discussed, *supra*, I believe those values vary between $119,561 at a $7.25 an hour rate and $314,497 at an $8.25 an hour rate).   But cases are settled

for a discount, compromise, of their full, potential, value, and in light of the facts and circumstances of this case I believe this settlement is adequate and proper and should be granted final approval by the Court.

17.    I believe the settlement represents a highly favorable outcome for the Class Members who would otherwise almost certainly collect nothing on their modest individual claims. That conclusion is based upon (1) The Defendants clearly committing to fund a significant payment to the class to settle the Class Members' claims, an amount that there is good reason to conclude, as discussed *supra,* is within a reasonable ballpark estimate of the class damages;  (2) The structure of the Settlement is such that Class Members who do not wish to participate in the Settlement can exclude themselves from the Settlement; and (3) While it is difficult to know precisely the potential amount of unpaid minimum wages or overtime owed to each class member, it is apparent, based upon the analysis of the information reviewed by my office, that the average claim possessed by a class member is small.  This means that, for the vast majority of the Class Members, the time and expense of individual litigation is not practical and would very likely dissuade contingency compensated counsel from taking on such a matter. As a practical matter, the only alternative to the Settlement for the class members is likely no recovery at all.

18.     The response of the class members to the proposed settlement also supports the granting of final approval.  Out of 645 class member notices mailed only 14 were confirmed by the settlement administrator as undeliverable, meaning 97.83% of the presumably received the notice.  See, Ex. "A" to the accompanying motion, Declaration of Christina Francisco, an employee of Simpluris.  Any class member who believed they possessed larger claims than that for which it was determined they were owed under the settlement, claims that they believed worthy of the risks of further litigation, had a right to exclude themselves from the settlement and pursue such claims individually.  Only seven class members elected to so exclude themselves and none of the class members have objected to the terms of the settlement.  *Id.*  Claims were filed by 233 class members representing 36.12% of all class members and such persons also holding 44.94% of the class claims.  *Id.*  Such claims participation is, on its own, substantial, and also indicates that many class members with a more substantial stake in this case, holding larger claims, support the settlement.  Such circumstances strongly support the conclusion that the settlement is seen favorably by the interested class members and should be granted final approval.

**PLAINTIFF'S COUNSEL'S QUALIFICATIONS AS CLASS COUNSEL**

19.     I have extensive experience in class actions and wage and hour litigation and am qualified to be appointed class counsel in this case.  I am a magna cum laude graduate of New York Law School and graduated in 1992.  I was first

admitted to practice law in 1993.  I am a member of the Bars of the States of New York, New Jersey, Nevada, California and Pennsylvania. I have substantial experience in litigating class actions, in particular wage and hour class action claims, and have been appointed class counsel in a significant number of litigations in various jurisdictions.  These cases include *Flores v. Vassallo*, Docket 01 Civ. 9225 (JSM), United States District Court, Southern District of New York; *Menjivar v. Sharin West et al.*, Index # 101424/96, Supreme Court of the State of New York, County of New York; *Rivera v. Kedmi*, Index # 14172/99, Supreme Court of the State of New York, County of Kings; *Burke v. Chiusano*, Docket 01 Civ. 3509 (KW), United States District Court, Southern District of New York; *Kalvin v. Santorelli*, Docket 01 Civ. 5356 (VM), United States District Court, Southern District of New York.  In all of the foregoing matters I was appointed sole counsel for the respective plaintiff classes.  All of these litigations involved unpaid wage claims.  I was also appointed class counsel in *Maraffa v. NCS Inc.*, Eighth Judicial District Court, State of Nevada, Case No. A504053 (2005), Dept. III.  I was appointed sole plaintiffs' class counsel in that case for a class of plaintiffs seeking damages for improper wage garnishments. I was also appointed class co-counsel in the following cases: *Klemme v. Shaw,* Docket CV-S-05-1263 (PMP-LRL), United States District Court, District of Nevada, in that case representing a class of persons making claims for unpaid health fund benefits under ERISA; *Williams v. Trendwest,* Docket CV-S-05-0605 (RCJ/LRL);

17

*Westerfield v. Fairfield Resorts,* Docket CV-S-05-1264 (JCM/PAL); *Leber v. Starpoint*, Docket CV-S-09-01101 (RLH/PAL); and *Brunton v. Berkeley Group,* Docket CV-S-08-1752 (PMP/PAL), United States District Court, District of Nevada, on behalf of classes of salespersons denied overtime wages, minimum wages, and commissions; *Allerton v. Sprint Nextel*, Docket CV-S-09-1325 (RLH/GWF), United States District Court, District of Nevada, on behalf of classes of telephone call center workers denied overtime wages and other wages; *Elliott v. Leatherstocking Corporation*, Docket 10-cv-00934 (MAD-DEP), United States District Court, Northern District of New York, on behalf of classes of hotel resort workers denied overtime wages and other wages; *Jankowski v. Castle Construction*, Docket CV-01-164, United States District Court, Eastern District of New York, on behalf of a class of construction workers denied overtime wages; *Levinson v. Primedia*, Docket 02 Civ. 2222 (DAB), United States District Court, Southern District of New York, on behalf of a class of Internet website guides for unpaid commissions due under contract and *Hallissey v. America Online,* Docket 99-CV-03785 (KTD), United States District Court, Southern District of New York, on behalf of a class of Internet "volunteers" for unpaid minimum wages.

I have read the foregoing and affirm the same is true and correct.

Affirmed this 22nd day of March, 2019

_____ /s/ *Leon Greenberg*
Leon Greenberg, Esq.